UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy Hernandez | | Not Reported |
| Deputy Clerk | | Court Reporter / Recorder |

Attorneys Present for Plaintiff(s):

Not Present

Attorneys Present for Defendant(s):

Not Present

**Proceedings:** **(In Chambers) Order AFFIRMING in Part and REVERSING and REMANDING in Part Bankruptcy Court's Order Granting Library Asset Acquisition Company's Motion to Dismiss the Second Amended Complaint**

Before the Court is an appeal from bankruptcy matter *In re R2D2, LLC*, USBC No. 2:10-bk-19924-BR. Dkt. # 1.[1] In this appeal, Plaintiff Screen Capital International Corp. ("SCIC" or "Appellant") challenges a July 22, 2013 Order from the United States Bankruptcy Court for the Central District of California ("Bankruptcy Court") granting Defendant Library Asset Acquisition Company, Ltd.'s ("LAAC") Motion to Dismiss the Second Amended Complaint

---

[1] Related adversary proceedings were filed in connection with the involuntary bankruptcy cases against R2D2, LLC ("R2D2"); CT-1 Holdings, LLC ("CT-1"); CapCo Group, LLC ("CapCo"); Capitol Films Development, LLC ("CFD"); and ThinkFilm, LLC ("ThinkFilm") (collectively, the "Debtors"). *Appellant's Opening Brief in In re R2D2, LLC*, 13-cv-5537 ("AOB") at 1 n.1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG; CV 13-5543 PSG; CV 13-5551 PSG; CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*); Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*); Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*); Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

("SAC").[2]  The Court finds the appeal appropriate for decision without oral argument.  Fed. R. Civ. P. 78(b); L.R. 7-15.  After considering the papers filed in support and opposition, the Court AFFIRMS in part and REVERSES and REMANDS in part the Bankruptcy Court's July 22, 2013 Order granting LAAC's Motion to Dismiss.

I.  <u>Background</u>

SCIC brings these actions against TFC Library, LLC ("TFC"), LAAC, and Zelus, LLC ("Zelus"), pursuant to a stipulation transferring standing from the Chapter 11 Trustee of the bankruptcy estates of the Debtors ("Trustee") to SCIC.  AOB at 4; SAC ¶8.[3]  SCIC's claims in this action arise from an alleged conspiracy by David Bergstein ("Bergstein") and Ronald Tutor ("Tutor"), the Members and Managers of R2D2, to "strip R2D2 and its affiliates of any and all assets of value before the creditors notice[d] and the companies collapsed."  SAC ¶¶ 2-3.  As part of this alleged conspiracy, R2D2 created a set of co-conspiring companies, including LAAC, and moved assets between these companies "without regard to creditors' rights in such

---

[2] SCIC also appealed the Bankruptcy Court's order dismissing the SAC in *In re Capitol Films Development, LLC* (13-cv-5543), *In re CapCo Group, LLC* (13-cv-5551), and *In re CT-1 Holdings, LLC* (13-cv-5581).  These appeals were consolidated on October 24, 2013.  Dkt. #16.  For ease of reference, the Court will collectively refer to these complaints as "SAC."

[3] Citations to "SAC" refer to the Second Amended Complaint filed in the R2D2 Action, which is located in the record at Volume 1, Tab 1 of the Excerpts of Record in Support of Appellant's Opening Brief ("ER").  Where it is necessary to cite to the Second Amended Complaint in another Debtor's specific action, the Court will include the name of that action in the citation, e.g., "*In re CapCo* SAC."  Hereinafter, citations to all other portions of Appellant's Excerpts of Record shall appear in the form [volume] ER [tab], at [page number within record].  Citations to Appellee LAAC's Supplemental Excerpts of Record shall appear in the form [volume] SER [tab], at [page number within supplemental record].

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

assets, and at all times by keeping creditors guessing as to where their source of recovery might lie. . . ." *Id.* ¶3. Specifically, SCIC alleges a grand scheme to:

> (1) have the Debtors borrow or guarantee over $100 million in debt and utilize large amounts of loan funds to pay the personal expenses of insiders. . . (2) transfer the underlying collateral (the TFC Library)[4] away from the Debtors, and (3) acquire the underlying debt and foreclose on the TFC Library, all for the benefit of the other insiders and to the detriment of legitimate third-party creditors.

AOB at 4; *see* SAC ¶¶ 56-57. The Court summarizes the relevant parts of this alleged conspiracy below.

Between January 2006 and February 2008, "one or more of the Debtors" obtained a series of loans ("Zwirn Loans") from entities related to D.B. Zwirn, a New York hedge fund ("Zwirn"). SAC ¶26. These loans included approximately $45 million in loans made by Zwirn to ThinkFilm and unspecified "affiliated entities" (the "ThinkFilm Loans"). *Id.* Bergstein and Tutor executed various guarantees on these loans. *Id.* ¶¶ 26-31. Bergstein and Tutor then restricted the Zwirn Loans "so that their liens were worth acquiring with Tutor's money, then caus[ed] enough distress to Zwirn that they sold the Zwirn Loans at an attractive price . . . ." *Id.* ¶36. Then, from March to July 2008, Zwirn entered into a series of "Global Amendments" with CT-1, ThinkFilm, and certain affiliated entities ("Borrowers"). *Id.* SCIC alleges that these Global Amendments were intended to ensure that all of the Borrowers would default under the Zwirn loans, and thus to lay the foundation for Bergstein and Tutor's plot to foreclose on the Borrowers' assets. *Id.*

SCIC alleges that as the first phase of their alleged "conspiracy," Bergstein and Tutor drafted—and backdated—an Asset Purchase Agreement ("APA"), which transferred the rights in the films within the TFC Library from a number of "Sellers" and unnamed "Seller Affiliates"

---

[4] The "TFC Library" is a film library of approximately 539 films. SAC ¶59.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

to TFC.[5] SAC ¶¶ 58-59, Ex. 2. In exchange for these transfers, the parties to the October 24, 2008 APA agreed on an aggregate purchase price of $46.5 million, comprised of a minimum cash amount of $500,000 and the assumption by TFC of the Sellers' liabilities, including their debt obligations under the ThinkFilm Loans. *Id.* ¶75, Ex 2 at §2.4.

SCIC also alleges that LAAC entered into a Note Purchase and Sale Agreement ("NPA") on March 12, 2009, in which LAAC agreed to purchase all of the Zwirn loans from Zwirn for $108 million. *Id.* ¶76. However, the NPA was amended so that LAAC only purchased: (1) the BWT Loans, which were defined in the NPA; and (2) the ThinkFilm Loans and all related rights and collateral, including the TFC Library. *Id.* ¶81.

Based on this alleged conspiracy, SCIC filed separate adversary proceedings on behalf of R2D2, CFD, CapCo, and CT-1 (collectively, the "Appealing Debtors"), against TFC, LAAC, and Zelus. *See* AOB at 4. On July 22, 2013, the Bankruptcy Court granted LAAC's Motion to Dismiss the SAC. 2 ER 7. SCIC's claims for disallowance and equitable subordination were dismissed without prejudice, but the Bankruptcy Court ordered that SCIC could only pursue these two claims through a motion filed in accordance with Bankruptcy Rule 3007(a) and 9014, rather than through an adversary proceeding. 2 ER 7, at 474.

SCIC now appeals the Bankruptcy Court's dismissal of its claims for: (1) avoidance and recovery of the fraudulent transfer of rights to the TFC Library, pursuant to the APA; (2) avoidance and recovery of the preferential transfer of rights to the TFC Library, pursuant to the APA; (3) an accounting; (4) declaratory judgments that LAAC lacks the right and authority to

---

[5] While the APA names the Buyer as "Orange Holdings, LLC," SAC, Ex. 2 at 1, SCIC alleges that "TFC was formerly known as Orange Holdings, LLC." SAC ¶9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|----------|-------------------------------------------------------------------------|------|----------------|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

foreclose on the TFC Library, and that LAAC's Section 1111(b) election is not viable;[6] (5) recharacterization of LAAC's debt; (6) conspiracy to aid and abet breach of fiduciary duty;[7] and (7) injunctive relief[8] (collectively, the "Dismissed Claims"). AOB at 4; *see generally* SAC. SCIC also challenges the Bankruptcy Court's (a) holding that the Appealing Debtors' equitable subordination claims can only be brought pursuant to a motion, and (b) denial of leave to amend the Dismissed Claims. AOB at 28-30.

II.   <u>Jurisdiction</u>

The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(1). This Court has jurisdiction under 28 U.S.C. § 158(a)(1). In relevant part, 28 U.S.C. § 158(a) provides: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees." 28 U.S.C. § 158(a). Although the Bankruptcy Court dismissed SCIC's equitable subordination claim "without prejudice," this was a final order which foreclosed SCIC's ability to bring this claim within an adversary proceeding, as the Bankruptcy Court further held that "any such relief must be sought pursuant to a motion filed win accordance with Bankruptcy Rules 20007(a) and 9014." 1 ER 7, at 461. *See In re Davis*, 177 B.R. 907, 910 (9th Cir. B.A.P. 1995) (finding that the bankruptcy court's dismissal of a complaint without prejudice was "final," as the bankruptcy court contemplated that the action

---

[6] This additional claim for declaratory judgment regarding LAAC's Section 1111(b) election is only asserted in the CapCo and CT-1 Actions. *Appellant's Reply* at 10; *LAAC's Opening Brief* at 20-21.

[7] This claim was only asserted in the R2D2 Action. *Appellant's Reply* at 13; *LAAC's Opening Brief* at 24.

[8] This claim was only asserted in the CT-1 Action. *LAAC's Opening Brief* at 28; *see Appellant's Reply* at 15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

could only be brought again by filing a new adversary proceeding). On appeal, the district court may affirm, modify, or reverse a bankruptcy court's judgment, order, or decree, or remand with instructions for further proceedings. *See* Fed. R. Bankr. P. 8013.

III.   Standard of Review

"A district court reviews a bankruptcy court's conclusions of law and interpretation of the Bankruptcy Code *de novo*." *In re Orange County Nursery, Inc.*, 439 B.R. 144, 148 (C.D. Cal. 2010) (citations omitted); *see also Greene v. Savage*, 583 F.3d 614, 618 (9th Cir. 2009). As such, the Court reviews *de novo* the Bankruptcy Court's dismissal of SCIC's claims against LAAC. *See In re Daewoo Motor Am., Inc.*, 471 B.R. 721, 748 (C.D. Cal. 2012) (holding that a grant of a motion to dismiss is reviewed *de novo*); *In re JMC Telecom LLC*, 416 B.R. 738, 741 (C.D. Cal. 2009) (holding that an appeal of an order granting a motion to dismiss raises only questions of law because a "Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint"). The Court reviews the Bankruptcy Court's findings of fact for clear error. *In re Thomas*, 428 F.3d 1266, 1268 (9th Cir. 2005).

Finally, the Court reviews the Bankruptcy Court's decision to deny SCIC leave to amend under an abuse of discretion standard. *Leadsinger, Inc. v. VMG Music Pub'g*, 512 F.3d 522, 532 (9th Cir. 2008) ("We review a denial of leave to amend for abuse of discretion.") (citing *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002)). An abuse of discretion occurs when a court "misapprehend[s] the law with respect to the underlying issues in the litigation," or "rests its conclusions on clearly erroneous findings of fact." *Chalk v. United States Dist. Court*, 840 F.2d 701, 704 (9th Cir. 1988).

IV.   Legal Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG; <br> CV 13-5543 PSG; <br> CV 13-5551 PSG; <br> CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*); <br> Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*); <br> Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*); <br> Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

dismiss a cause of action if the plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint under Rule 12(b)(6), courts should be mindful that the Federal Rules of Civil Procedure generally require only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required to survive a Rule 12(b)(6) motion to dismiss, a complaint that "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the complaint must allege sufficient facts to support a plausible claim for relief. *Id.*

In evaluating a Rule 12(b)(6) motion, the Court must engage in a two-step analysis. *See id.* at 679. First, the Court must accept as true all non-conclusory, factual allegations made in the complaint. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993). Based upon these allegations, the Court must draw all reasonable inferences in favor of the plaintiff. *Doe v. United States*, 419 F.3d 1058, 1062 (9th Cir. 2005). Second, after accepting as true all non-conclusory allegations and drawing all reasonable inferences in favor of the plaintiff, the Court must determine whether the complaint alleges a plausible claim for relief. *Iqbal*, 556 U.S. at 679. Despite the liberal pleading standards of Rule 8, conclusory allegations will not save a complaint from dismissal. *Id.* at 678-79.

Ruling on a motion to dismiss will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* at 679 (alteration in original; internal quotation marks and citation omitted). Furthermore, in ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider exhibits attached to the complaint, matters subject to judicial notice, or documents relied on by the complaint whose authenticity no party questions. *See Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007); *Lee v. City of Los*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|----------|------------------------|------|----------------|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

*Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The Court is not required to accept as true allegations in the complaint which are contradicted by these documents, "or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Allegations of fraud must be pleaded with particularity. Fed. R. Civ. P. 9(b); *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1103-05 (9th Cir. 2003). Conclusory allegations of fraud are insufficient. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). The plaintiff must plead "the who, what, when, where, and how" of the alleged fraud. *Vess*, 317 F.3d at 1106 (internal quotation marks and citation omitted). Further, if the plaintiff claims that a statement is false or misleading, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (emphasis added). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (alterations omitted) (citation omitted) (internal quotation marks omitted). "A party alleging fraud must set forth more than the neutral facts necessary to identify the transaction." *Id.* (citation omitted) (internal quotation marks omitted). Moreover, "Rule 9(b)'s particularity requirement applies to state-law causes of action." *Vess*, 317 F.3d at 1103.

The pleading requirements of Rules 8 and 9 must be met as to each defendant. *Yost v. Nationstar Mortgage, LLC*, 2012 WL 4288590, *3 (E.D. Cal. Sept. 9, 2013). "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *United States v. Corinthian Colleges*, 655 F.3d 984, 997-98 (9th Cir. 2011) (citation omitted) (internal quotation marks omitted).

V.      Discussion

SCIC contends that the Bankruptcy Court committed reversible error in granting LAAC's motion to dismiss. AOB at 2. The Court will first consider the sufficiency of the allegations supporting the Dismissed Claims within the SAC. The Court will then evaluate whether the Bankruptcy Court properly held that the Appealing Debtors could only bring their equitable subordination claims through a motion, rather than an adversary proceeding. Finally, the Court will determine whether the Bankruptcy Court properly denied leave to amend the Dismissed Claims. Because the Court finds that the allegations supporting the Dismissed Claims are insufficient to satisfy the applicable pleading standards, it need not address LAAC's additional argument that these claims are also barred by a June 8, 2009 Release. *See LAAC's Opening Brief*, at 8.

A.      SCIC Failed to Adequately Plead Its Claims Against LAAC

SCIC failed to meet the applicable pleading standards for each Dismissed Claim against LAAC. The Court will review the each of these claims separately below.

i.      *Fraudulent Transfer*

SCIC alleges that Bergstein and Tutor, on behalf of the Debtors, "transferred certain of [their] assets, either title to certain of the films in the TFC Library[,] or distribution rights related to such films in the TFC Library . . . to or for the benefit of the [sic] LAAC and TFC." SAC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

¶121.  Based on these alleged transfers, SCIC brings a claim against LAAC for avoidance and recovery of fraudulent transfer under California Civil Code §§ 3439 et seq. and 11 U.S.C. §§ 544, 548, and 550.

"Under § 544(b) and § 550(a) of the Bankruptcy Code, a trustee may avoid a fraudulent transfer of property if that transfer is avoidable under applicable state law." *In re JTS Corp.*, 617 F.3d 1102, 1111 (9th Cir. 2010).  California's Uniform Fraudulent Transfer Act ("CUFTA") protects creditors against both actual fraud and constructive fraud.  *See Optional Capital, Inc. v. Das Corporation*, 222 Cal. App. 4th 1388, 1401-02 (Jan. 15, 2014).  An actual fraudulent transfer is a transfer made with "actual intent to hinder, delay or defraud any creditor of the debtor."  *Id.* (citing Cal. Civ. Code § 3439.04(a)(1)).  There are two forms of constructive fraudulent transfer under the CUFTA.  One form can be shown if a debtor made the transfer without receiving "reasonably equivalent consideration" and either "(A) [w]as engaged or about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction" or "(B) [i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due."  Cal. Civ. Code § 3439.04; *see Meija v. Reed*, 31 Cal. 4th 657, 669 (2003) (citation omitted) (internal quotation marks omitted).  A transfer is also constructively fraudulent as to existing creditors "if the debtor does not receive reasonably equivalent value *and* was insolvent at that time or . . . became insolvent as a result of the transfer . . . ."  *Meija*, 31 Cal. 4th at 669 (quoting Cal. Civ. Code § 3439.05) (internal quotation marks omitted).

Section 548 of the Bankruptcy Code "provides a federal statutory basis for avoiding fraudulent transfers."  *In re United Energy Corp.*, 944 F.2d 589, 593 (9th Cir. 1991); *see also In re JTS Corp.*, 617 F.3d at 1111.  The federal fraudulent transfer provisions are "similar in form and substance" to California's fraudulent conveyance statutes, summarized above.  *In re United Energy Corp.*, 944 F.2d at 594.  *Compare* 11 U.S.C. 548 *and* Cal. Civ. Code §§ 3439.04,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

3439.05.  However, to bring a fraudulent transfer claim under Section 548, SCIC must also allege that the transfer it seeks to avoid was made within two years of the filing of the bankruptcy petition.  11 U.S.C. § 548(a)(1)(B); *In re United Energy Corp.*, 944 F.2d at 594 n.5.

Claims of avoidance and recovery of an actual fraudulent transfer are subject to the heightened pleading standards of Rule 9(b).  *See, e.g.*, *In re SCI Real Estate Investments, LLC*, 2013 WL 1829648, at *3 (Bankr. C.D. Cal. 2013).  Thus, "the circumstances constituting the alleged fraud" must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns*, 567 F.3d at 1124 (alterations omitted) (citation omitted) (internal quotation marks omitted).  However, Rule 9(b)'s heightened pleading standards are not generally applied to claims of avoidance and recovery of constructively fraudulent transfers, as they do not require proof of fraud.  *See, e.g.*, *In re SCI*, 2013 WL 1829648, at *6 (citation omitted); *In re Actrade Fin. Tech. Ltd.*, 377 B.R. 791, 801 (Bankr. S.D.N.Y. 2005) (citing *In re Sharp Int'l Corp. v. State Street Bank & Trust Co.*, 403 F.3d 43, 53 (2d. Cir. 2005)).

SCIC brings a single "fraudulent transfer" claim against LAAC,[9] although this claim parrots the statutory elements for avoidance and recovery of both actual *and* constructively fraudulent transfers.  *Compare* SAC ¶¶ 122-126 *and* Cal. Civ. Code §§ 3439.04-3439.05.  Regardless, to properly plead a claim to avoid and recover a transfer based on either theory of fraud, SCIC must allege sufficient facts regarding the underlying transfer.  It fails to do so, under either Rule 8 or Rule 9.

While SCIC claims that the films in the TFC Library could only have belonged to "one of ThinkFilm, FPLAC, or Zoopraxis" on the effective date of the APA, SCIC further alleges that "there exist in the books and records of the Debtors documents that appear to establish which

---

[9] SCIC asserts this claim in each of the actions consolidated here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

films in the TFC Library were owned by ThinkFilm and which 'Seller Affiliates' had interests in films in the TFC Library at the time the 10/24/08 APA purports to have become effective."  SAC ¶65.  Because identifying the specific chain of title and "other interests" in each of the 539 films "would be onerous and would require approximately 250,000 pages of back up documentation[,]"  SCIC attaches a chart "summarizing" the chain of title and other interests. *Id.* ¶67, Ex. 3.  SCIC therefore relies on this summary chart as the foundation for its claims predicated on a fraudulent transfer of the Debtors' interests in the TFC Library pursuant to the APA.  *E.g.*, *id.* ¶¶ 121-31, 144-48, 168-70.  This summary chart is excerpted below:

| TITLE | CAPCO GROUP LLC | | | CAPITOL FILM DEVELOPMENT | | | CT-1 HOLDINGS | | | R2D2 LLC | | | THINKFILM LLC | | | TOTALS |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | PTY 1 | PTY 2 | REF | PTY 1 | PTY 2 | REF | PTY 1 | PTY 2 | REF | PTY 1 | PTY 2 | REF | PTY 1 | PTY 2 | REF | |
| KING OF THE ANTS | | | | | | | | | | | | | 3 | 1 | 2 | 6 |
| KIWI SAFARI | | | | | | | | | | | | | 1 | | 2 | 3 |
| KOMODO | | | | | | | | | | | | | 1 | | 2 | 3 |
| KONTROLL | | | | | | | | | | | | | 3 | | 2 | 5 |
| KUNG PHOOEY | | | | | | | | | | | | | 3 | 2 | 4 | 9 |
| LADY JANE KILLER | | | | | | | | | | | | | 3 | 1 | 2 | 6 |
| LAKE OF FIRE | | | | | | | | 1 | 1 | | | | 2 | 2 | 2 | 8 |
| LANDSLIDE | | | | | | | | | | | | | 1 | | 2 | 3 |
| LANDSPEED | | | | | | | | | | | | | 3 | 1 | 2 | 6 |
| LAST CONFEDERATE | | | | | | | | | | | | | 3 | 2 | 2 | 7 |
| LAST KISS | | | | | | | | | | | | | 3 | | 2 | 5 |
| LAST LIVES | | | | | | | | | | | | | 1 | | 3 | 4 |
| LAST MOGUL | | | | | | | | | | | | | 2 | | 2 | 4 |
| LAST REQUEST | | | | | | | | | | | | | 1 | | 1 | 2 |
| LAST RESORT | | | | | | | | | | | | | | | 3 | 3 |
| LAST RUN | | | | | | | | | | | | | 1 | | 4 | 5 |
| LAST WEDDING | | | | | | | | | | | | | 2 | | 2 | 4 |
| LAST WORD, THE | 1 | 2 | 3 | | | | | | | | | | 1 | | 2 | 9 |
| LAWS OF ATTRACTION | | | | | | | | | | 7 | 1 | 3 | 1 | | 1 | 13 |
| LAYIN LOW | | | | | | | | | | | | | 1 | | 2 | 3 |
| LEGEND OF PIRATE'S POINT | | | | | | | | | | | | | 1 | | 3 | 4 |

*Id.*, Ex. 3 at 5.

The chart provides for three types of "interest" in the TFC Library films, held at *any* time prior to the APA: (1) "those instances where a party was recorded as a transferor of rights in a particular film" (PY1); (2) "those instances where a party was recorded as a transferee of rights

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

in a particular film" (PY2); and (3) "those instances where a party was referenced in a recorded document related to the transfer of rights in a particular film" (REF). *Id.* ¶67.

While the SAC, through this chart, asserts that each of the Debtors held an "interest" in some of the films within the TFC Library, it fails to account for, much less describe, the nature of each alleged interest, whether each "recording" is a unique interest or merely reflects repeated transfers of the same interest, what type of "references" were recorded, or when these alleged transfers occurred. *Cf. id.* Moreover, neither the allegations in the SAC, nor the information in the summary chart, state *when* these alleged interests were held by each Debtor. Importantly, SCIC fails to allege whether any interest held by each Debtor was transferred directly to TFC, which then passed this interest directly to LAAC; or whether each Debtor merely held some tangential interest in a film, which was transferred to multiple entitles, before ultimately being transferred to LAAC. *Id.* Lacking any and all such detail, the SAC simply groups together all of the unspecified interests allegedly reflected in the summary chart as a single "Film Transfer." *Id.* ¶121.

The SAC also fails to provide any nonconclusory allegations regarding the interest TFC acquired in these films for the benefit of LAAC. *See generally id.* SCIC only ambiguously states that "TFC was the initial transferee of the Film Transfer, or the entity for whose benefit the Film Transfer was made, or is the immediate or mediate transferee of the initial transferee receiving such Film Transfer," and that "LAAC was the entity for whose benefit the Film Transfer was made, or is the immediate or mediate transferee of the initial transferee receiving such Film Transfer." *Id.* ¶¶ 129-30.

Ultimately, then, SCIC has not pointed to what, if any, rights in the TFC Library were transferred by each Appealing Debtor to or for the benefit of LAAC. *See, e.g.*, *In re Erickson Ret. Cmtys., LLC*, 475 B.R. 762, 767 n.4 (Bankr. N.D. Tex. 2012) ("With fraudulent transfer claims, as in the case of a preference claim, a plaintiff bears the burden of proving that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

transfer involved was 'of an interest of the debtor in property' before even reaching the various other elements of the claim.") (citing 11 U.S.C. § 548(a)(1)). While SCIC's opening brief asserts that the SAC contains sufficient allegations to "state a plausible claim that this Debtor had an interest in certain films in the TFC Library, that all of the TFC Films were transferred to TFC in or about August 2009, and that any related rights in the TFC Library . . . were transferred to TFC at or near the same time[,]" AOB at 15-16, it fails to include *any* argument germane to LAAC's role as the subsequent transferee of the fraudulent transfer, or any discussion as to how LAAC actually benefitted from that transfer, *see id.* at 14-17.

Even under Rule 8, the SAC fails to properly allege what—if any—rights in the TFC Library were transferred by each Appealing Debtor "to or for the benefit of" LAAC, *id.* ¶121, and thus what each Appealing Debtor seeks to recover *from LAAC*.  Without properly alleging an underlying transfer, SCIC cannot bring a claim for avoidance and recovery of a constructively fraudulent transfer under Rule 8, much less meet the heightened pleading requirements for avoidance and recovery of an actual fraudulent transfer under Rule 9.  The Bankruptcy Court properly dismissed this claim.

### ii.    *Preferential Transfer*

SCIC also asserts a claim for avoidance and recovery of a preferential transfer against LAAC as "an insider of R2D2."  SAC ¶136.  In order to state a claim for a preferential transfer against LAAC as an "insider," SCIC must adequately allege that (1) there was a transfer "of an interest of the debtor in property"; (2) the transfer was "to or for the benefit of" LAAC; (3) the transfer was "for or on account of an antecedent debt owed by the debtor before such transfer"; (4) the transfer was made while the debtor was insolvent; (5) the transfer was made within a year of the filing of the bankruptcy petition; (6) LAAC had "reasonable cause to believe the debtor was insolvent at the time of such transfer"; and (7) the transfer enabled LAAC to receive more than it would have received in a hypothetical chapter 7 bankruptcy case, if the prepetition

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

transfer had not been made.  11 U.S.C. § 547(b); *see also Begier v. IRS*, 496 U.S. 53, 57 (1990).

As each of these elements show, SCIC must sufficiently state a "prepetition 'transfer' of an interest of the debtor in property" in order to state a claim for preferential transfer under Section 547 of the Bankruptcy Code.  *See Begier*, 496 U.S. at 58 ("The reach of *§547(b)*'s avoidance power is therefore limited to transfers of 'property of the debtor.'") (emphasis in original); *see also Claybrook v. Metro Auto Xpress, LLC*, No. 05-20022 (PJW), 2008 Bankr. LEXIS 2045, at *6 (Bankr. D. Del. July 25, 2008) (citing 5 COLLIER ON BANKRUPTCY 553.09[1][a] (Alan N. Resnick & Henry J. Sommers eds. 15th ed. rev. 2008) (footnotes omitted)) ("At a minimum, a preference under section 547(b) requires a prepetition 'transfer' of an interest of the debtor in property."); *see also In re Erickson Ret. Cmtys., LLC*, 475 B.R. at 767 ("With fraudulent transfer claims, *as in the case of a preference claim*, a plaintiff bears the burden of proving that the transfer involved was 'of an interest of the debtor in property' before even reaching the various other elements of the claim.") (emphasis added).

Yet, because SCIC has not adequately explained what, if any, rights in the TFC Library were actually transferred by each Debtor to TFC pursuant to the APA, and what portion of these unspecified rights were subsequently transferred to or for the benefit of LAAC, SCIC has not properly pled a preference transfer, as required by Section 547(b) of the Bankruptcy Code.  *See Claybrook v. Metro Auto Xpress, LLC*, 2008 Bankr. LEXIS 2045, at *6; *cf. In re Erickson Ret. Cmtys., LLC*, 475 B.R. at 767 (finding that payments relating to prepetition invoices were not avoidable as preferences under section 547(b), or fraudulent transfers under section 548(a), because defendant did not receive a transfer of property interest from the debtor).

Additionally, SCIC's summary chart shows the entire chain of title and other interests for the films within the TFC Library, without any details on *when* each alleged interest was transferred.  Thus, it is impossible to discern which—if any—of the transfers allegedly made by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

the Appealing Debtors were made within one year of the filing of the bankruptcy petition, as required under 11 U.S.C. § 547(b).

SCIC has failed to properly state a claim against LAAC for avoidance and recovery of a preferential transfer. Therefore, the Bankruptcy Court properly dismissed this claim in the SAC.

### iii.    Accounting

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179, 92 Cal. Rptr. 3d 696, 715 (2009). In its seventh claim for relief against LAAC, SCIC asserts that it is "entitled to an accounting of . . . the amounts paid to LAAC by TFC from the sale, distribution, or other exploitation of the TFC Library." SAC ¶150.

This claim also relies on the proper pleading of a transfer of each Debtor's rights in the TFC Library to TFC, and how these rights were ultimately transferred to or for the benefit of LAAC. Because SCIC fails to properly allege these underlying elements, the Bankruptcy Court properly dismissed SCIC's accounting claim against LAAC.

### iv.    Declaratory Judgment

SCIC also seeks declaratory judgments that: (1) LAAC is not a successor to the lenders' interests in the ThinkFilm Loans, and therefore "lacks the right and authority to foreclose upon the TFC Library and related rights"; and (2) LAAC has no claim against CapCo and CT-1, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|----------|----------------------------------------------------------------------------|------|----------------|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

therefore LAAC's purported election under Section 1111(b) is not viable.[10]  *Id.* ¶¶ 153, 157; *In re CapCo* SAC ¶¶ 217-220.

SCIC's claim on behalf of the Appealing Debtors for declaratory judgment regarding LAAC's ability to foreclose on the TFC Library relies on the proper pleading of what rights or interests each Debtor held in the TFC Library when this alleged conspiracy began.  As explained above in Section V.A.i, SCIC has failed to properly allege this essential component.  Therefore, the Bankruptcy Court properly dismissed this portion of SCIC's claim for declaratory relief against LAAC.

Additionally, "[d]eclaratory relief is designed to resolve uncertainties or disputes that may result in future litigation.  It operates prospectively and is not intended to redress past wrongs." *StreamCast Networks, Inc. v. IBIS LLC*, No. CV 05-4239 MMM (EX), 2006 WL 5720345, at *3 (C.D. Cal. 2006); *see also Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 943 (9th Cir. 1981) (The Declaratory Judgment Act "brings to the present a litigable controversy, which otherwise might only be tried in the future."); *Olenicoff v. UBS AG*, No. SACV 08-1029 AG (RNBx), 2010 WL 8530286, at *34 (C.D. Cal. 2010) ("Declaratory relief is not available to merely adjudicate past conduct or to establish liability.") (citations omitted); *Canova v. Trustees of Imperial Irr. Dist. Emp. Pension Plan*, 150 Cal. App. 4th 1487, 1497, 59 Cal. Rptr. 3d 587, 594 (2007) ("Declaratory relief operates prospectively to declare future rights, rather than to redress past wrongs."); *Babb v. Super. Ct.*, 3 Cal. 3d 841, 848, 479 P.2d 379, 383 (1971) ("[Declaratory relief] serves to set controversies at rest before they lead to repudiation of

_____

[10] This second claim for declaratory judgment is only asserted in the CapCo and CT-1 Actions. While SCIC also seeks a declaratory judgment that "the TFC Library and related rights were not transferred by the Debtors and their affiliates to TFC pursuant to the 10/24/08 APA," that request regarding TFC's rights is not at issue in reviewing the Bankruptcy Court's dismissal of LAAC.  *See* SAC ¶157.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

obligations, invasion of rights or commission of wrongs; in short, the remedy is to be used in the interests of preventive justice, to declare rights rather than execute them.") (citation omitted) (internal quotation marks omitted).

Here, SCIC also seeks a declaratory judgment that because LAAC lacks any claims against CapCo and CT-1, the Section 1111(b) election LAAC made on May 23, 2012—almost a full year before the SAC was filed—is not viable. *See* 1 SER 10, at 115-16. As SCIC merely seeks a declaration regarding past conduct, this is an improper basis for declaratory relief.

For the foregoing reasons, the Bankruptcy Court properly dismissed SCIC's request for declaratory relief.

### v.    *Recharacterization of LAAC Debt*

SCIC also asserts that LAAC's purchase of the ThinkFilm and BWT Loans from Zwirn should be recharacterized as an equity contribution in each of the Appealing Debtors.  SAC ¶173; *see also* SAC ¶81 (noting only that under the 3/12/09 NPA, LAAC only purchased the ThinkFilm and BWT Loans).

In bankruptcy proceedings, a court may recharacterize a purported "debt" as an equity contribution.  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1146-49 (9th Cir. 2013). While circuit courts largely agree that such recharacterization is authorized under the Bankruptcy Code, the circuits have taken various approaches to determining when such recharacterization is appropriate.  *In re Fitness Holdings*, 714 F.3d at 1148 (summarizing the various approaches). However, the Ninth Circuit recently held that it agreed with the approach adopted by the Fifth Circuit, in which "purported 'debt' is recharacterized as equity where state law would treat the asserted interest as an equity interest." *Id.* (citation omitted).  Thus, "in order to determine whether a particular obligation *owed by the debtor* is a 'claim' for purposes of bankruptcy law, it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|----------|----------------------------------------------------------------------------|------|----------------|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

is first necessary to determine whether that obligation gives the holder of that obligation a 'right to payment' under state law." *Id.* at 1149 (emphasis added).

Yet, the SAC lacks sufficient facts to undertake this analysis, as SCIC fails to allege that the "debt" it seeks to recharacterize is an obligation owed by any of the Appealing Debtors. First, the SAC fails to allege that any of the Appealing Debtors were borrowers under the ThinkFilm or BWT Loans. *See generally* SAC. Instead, the SAC alleges that the ThinkFilm Loans were made to ThinkFilm and unspecified "affiliated entities," *id.* ¶26(a), and completely fails to specify the borrowers for the BWT Loans, *see id* ¶81 (noting only that the BWT Loans are "defined in the 3/12/09 NPA," which is not attached to the SAC). Second, any debt obligations of the Appealing Debtors under the ThinkFilm Loans would have been assumed by TFC *prior to* LAAC's purchase of these loans, as SCIC has alleged that under the APA, TFC agreed to assume certain liabilities of the sellers, "including the ThinkFilm Loans." SAC ¶62. Although SCIC claims that TFC did not "honor" its debt assumption obligation, *id.*, it later clarifies that this refers to the alleged failure by TFC to "pay revenue from the TFC Library to LAAC to satisfy TFC's debt assumption obligations[,]" *id.* ¶129. TFC's assumption of all debt obligations under the ThinkFilm Loans is also implied by SCIC's allegation that the TFC Library served as "collateral related to the ThinkFilm Loans." *Id.* ¶68.

SCIC has failed to allege that LAAC's purchase of the ThinkFilm and BWT Loans involved debt obligations owed by *any* of the Appealing Debtors. Therefore, SCIC cannot plead that the debt LAAC acquired through this purchase should be recharacterized as equity contributions to any of the Appealing Debtors. The Bankruptcy Court also properly dismissed this claim.

> vi.    *Conspiracy to Aid and Abet Breach of Fiduciary Duty*

In the R2D2 Action, SCIC also brings a claim against LAAC for "Conspiracy to Aid and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

## CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

Abet Breach of Fiduciary Duty." SAC ¶¶ 221-230. The Court notes at the outset that no such cause of action exists in California, as conspiracy to commit a tort is distinct from aiding and abetting the commission of a tort. *Berg & Berg Enters., LLC v. Sherwood Partners, Inc.*, 131 Cal. App. 4th 802, 823 n.10 (2005) ("Despite some conceptual similarities, civil liability for aiding and abetting the commission of a tort, which has no overlaid requirement of an independent duty, differs fundamentally from liability based on conspiracy to commit a tort."); *see also Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1133-35 (C.D. Cal. 2003) (MMM) (noting that although "California courts have certainly recognized that conspiracy and aiding and abetting are closely allied forms of liability[,]" there are important distinctions between these two causes of action). While SCIC has borrowed elements of each cause of action in asserting this claim against LAAC, it has failed to properly allege that LAAC either conspired *or* aided and abetted in any breach of fiduciary duty against R2D2.

To state a claim for conspiracy to breach a fiduciary duty, SCIC must allege that LAAC itself owed a duty to R2D2. *Neilson*, 290 F. Supp. 2d at 1133 ("California courts have also held that a claim for civil conspiracy does not arise unless the alleged conspirator owed the victim a duty not to commit the underlying tort.") (citing California Supreme Court cases). The SAC fails to allege that LAAC owed R2D2 any such a duty. *See generally* SAC. SCIC responds to LAAC's challenge on this ground by asserting that "it is not necessary to allege that the aider and abettor owes the same duty as the primary violators." 1 ER 3 at 20; AOB at 26. Therefore, it appears that SCIC intends only to assert a cause of action for aiding and abetting a breach of fiduciary duty.

To bring a claim for aiding and abetting a breach of fiduciary duty, SCIC must allege that LAAC either: (1) knew that Bergstein and Tutor's conduct constituted a breach of fiduciary duty, and gave "substantial assistance or encouragement" to Bergstein and Tutor in carrying out this conduct"; or (2) gave substantial assistance to Bergstein and Tutor in accomplishing a tortious result, where LAAC's own conduct constitutes a breach of duty to R2D2. *Casey v. U.S.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

*Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005).  Thus, "causation is an essential element of an aiding and abetting claim, i.e., plaintiff must show that the aider and abettor provided assistance that was a substantial factor in causing the harm suffered."  *Neilson*, 290 F. Supp. 2d at 1135.  As SCIC fails to allege that LAAC owes any duty to R2D2, the Court will analyze this claim under the first theory.

Although the SAC sets forth various allegations regarding Bergstein's and Tutor's breach of fiduciary duties to R2D2, it fails to sufficiently allege that LAAC assisted or encouraged any such conduct.  Instead, it loosely alleges that Tutor breached his fiduciary duties by employing certain individuals "[d]irectly or through Zelus, LAAC or some other entities owned and/or controlled by Tutor," SAC ¶¶ 224(f)-(h), and that "LAAC participated in Bergstein's and Tutor's conspiracy through, inter alia, entering into the 3/12/09 NPA and LAAC's attempts to foreclose on the TFC Library."  SAC ¶226.

First, an allegation that LAAC was one of various entities that *could have* employed certain individuals falls far short of an allegation that LAAC substantially assisted or encouraged a breach of fiduciary duty.  *See Casey*, 127 Cal. App. 4th at 1144; *Neilson*, 290 F. Supp. 2d at 1135.  Further, as established above, SCIC has failed to allege either: (1) how LAAC's purchase of the ThinkFilm and BWT Loans under the 3/12/09 NPA relates *any* of the specific Appealing Debtors, including R2D2; or (2) what—if any—interests R2D2 held in the TFC Library, and therefore whether it would be affected by any attempted foreclosure of those assets.  *Supra* Sections V.A.iv-v.  Because SCIC fails to allege that LAAC gave "substantial assistance or encouragement" to Bergstein or Tutor in their alleged breaches of fiduciary duty to R2D2, it necessarily fails to sufficiently allege a claim against LAAC for "aiding and abetting" Bergstein and Tutor's breach of fiduciary duty.

For the foregoing reasons, the Bankruptcy Court properly dismissed SCIC's claim against LAAC for "conspiracy to aid and abet breach of fiduciary duty," as no such claim exists under

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

California law, and the SAC fails to state a claim for either conspiracy to breach a fiduciary duty *or* aiding and abetting a breach of fiduciary duty.

> vii.    *Injunctive Relief*

In the CT-1 Action, SCIC alleges a separate claim against LAAC for Injunctive Relief, in which it seeks to "enjoin LAAC from foreclosing upon the TFC Library and other collateral. . . [,]" pending resolution of its claims for fraudulent and preferential transfer. *In re CT-1 SAC* ¶167; *see In re CT-1 AOB* at 25-26. A party seeking a preliminary injunction must make a "clear showing" that:  (1) it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm if an injunction is not granted; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008).

SCIC cannot even satisfy the first *Winter* factor, as SCIC failed to properly plead its underlying claims for fraudulent or preferential transfer. This derivative claim for injunctive relief was also properly dismissed.

> B.    <u>The Bankruptcy Court Improperly Held That The Appealing Debtors Could Only Bring Their Equitable Subordination Claim Through a Motion</u>

SCIC also challenges the Bankruptcy Court's holding that the Appealing Debtors' equitable subordination claims cannot be brought through an adversary proceeding. Specifically, the Bankruptcy Court ordered that "any such relief much be sought pursuant to a motion filed in accordance with Bankruptcy Rules 3007(a) and 9014."  2 ER 7. Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 3007 governs objections to claims, while Bankruptcy Rule 9014 instructs parties to request relief by motion in contested matters "not otherwise governed by these rules." Thus, although the Bankruptcy Court expressly declined to rule on the merits of LAAC's motion to dismiss as to SCIC's equitable subordination claim, *id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

at 413:21, it effectively foreclosed the opportunity for SCIC to bring or amend this claim within the Appealing Debtors' adversary proceedings.

However, Rule 7001 of the Federal Rules of Bankruptcy Procedure, which provides a list of all items to be brought as adversary proceedings, expressly includes "a proceeding to subordinate any allowed claim or interest . . . ." Fed. R. Bank. Proc. 7001(8). In fact, Judge Russell acknowledged that a claim for subordination is an enumerated adversary proceeding during the hearing on LAAC's motion. 1 ER 6, at 413:7-8. Rule 3007(b) further commands that "[a] party in interest shall not include a demand for relief of a kind specified in Rule 7001 in an objection to the allowance of a claim, but may include the objection in an adversary proceeding." Fed. R. Bank. Proc. 3007(b). Still, Judge Russell stated that the equitable subordination claim "should have been filed as a – an objection to the claim. . . [,]" 1 ER 6, at 413:21-23, simply because "I don't like the idea of filing the complaints[,]" *id.* at 414:22-23.

The Bankruptcy Court erred in its ruling on this claim. The Court REVERSES this part of the Bankruptcy Court's Order and REMANDS, with instructions to the Bankruptcy Court to decide the merits of LAAC's challenge to SCIC's equitable subordination claim.

C.    The Bankruptcy Court Properly Denied Leave to Amend the Dismissed Claims

SCIC further contends that the Bankruptcy Court committed reversible error in denying SCIC leave to amend the Dismissed Claims. AOB at 27-28. The Court evaluates the Bankruptcy Court's decision denying leave to amend for abuse of discretion. *Leadsinger, Inc.*, 512 F.3d at 532.

Leave to amend should be granted even if the plaintiff did not request leave, unless it is clear that the complaint cannot be cured by the allegation of different or additional facts. *Doe v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

*United States*, 58 F.3d 494, 497 (9th Cir. 1995).  In determining whether to grant leave to amend a complaint, courts are guided by Rule 15(a), which states that "leave shall be freely given when justice so requires."  *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (internal quotation marks omitted).

However, a court must consider several factors in determining whether leave to amend is proper, such as "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended his complaint."  *Id.* (citation omitted); *see also Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011).  A court's discretion to deny leave to amend is "particularly broad where plaintiff has previously amended the complaint."  *Allen*, 911 F.2d at 373 (citation omitted) (internal quotation marks omitted); *see also Cafasso*, 637 F.3d at 1058.

The Bankruptcy Court did not apply law to facts in an illogical or implausible manner in denying leave to amend the Dismissed Claims.  *See United States v. Hinkson*, 585 F.3d 1247, 1262 (a court abuses its discretion when its application of law to facts is "illogical, implausible, or without support in inferences that may be drawn from the record").  This was SCIC's third attempt to properly plead claims against LAAC, and any further amendment would be futile.  *See LAAC's Opening Brief* at 6.  In reaching this determination, the Court notes that SCIC's "fraudulent transfer" claim failed to satisfy even the requirements of Rule 8, although it contained allegations of actual fraud, which are subject to Rule 9's heightened pleading standard.

Accordingly, the Bankruptcy Court did not abuse its discretion in denying SCIC leave to amend the Dismissed Claims.

VI.    <u>Conclusion</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-5537 PSG;<br>CV 13-5543 PSG;<br>CV 13-5551 PSG;<br>CV 13-5581 PSG | Date | April 25, 2014 |
|---|---|---|---|
| Title | Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re R2D2, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re Capitol Films Development, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CapCo Group, LLC*);<br>Screen Capital International Corp. v. Library Asset Acquisition Company, Ltd. (*In re CT-1 Holdings, LLC*); | | |

Based on the foregoing, the Bankruptcy Court's July 22, 2013 Order granting LAAC's motion to dismiss is AFFIRMED in part, and REVERSED and REMANDED in part.

**IT IS SO ORDERED.**

cc: USBC
    BK Appellate Court
    (BK10-19924-BR; ADV 12-1597-BR)